IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | § § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | C.A. No. 5:22-cv-19 |
| TAMMY DE LUNA AND JOHN ANTHONY DE LUNA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GUADALUPE DAVID DE LUNA, DECEASED, | | |
| Defendants. | | |

## **ORIGINAL COMPLAINT FOR INTERPLEADER**

Plaintiff Standard Insurance Company ("Standard") files its Complaint for Interpleader against Defendants Tammy De Luna ("Tammy") and John Anthony De Luna ("John"), Individually and as Administrator of the Estate of Guadalupe David De Luna (the "Estate"), and respectfully states:

## **PARTIES**

1. **Plaintiff Standard.** Standard is an Oregon corporation with its principal place of business in Portland, Oregon.

2. **Defendant Tammy.** Tammy is a citizen of Texas who may be served at 1005 Chaparral, Laredo, Texas 78045, or wherever she may be found.

3. **Defendant John/Estate.** John is a citizen of Texas (in his individual capacity) and Texas (in his representative capacity for the Estate) who may be served at 7619 King Arthurs Court, Apt 135, Laredo, Texas 78041, or wherever he may be found.

## JURISDICTION AND VENUE

4. **Jurisdiction.** This is an interpleader action to deposit life insurance proceeds under a Group Life Insurance Policy (the "Group Policy") into the Court's registry and obtain a declaration of the party or parties entitled to receive those proceeds. Standard also seeks a declaration that accidental death and dismemberment ("AD&D") benefits are not payable to Defendants (or anyone else) under the terms of the Group Policy. This Court therefore has jurisdiction under 28 U.S.C. §§ 1332 and 2201, as there is complete diversity between Standard, on the one hand, and Defendants, on the other hand, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. **Venue.** Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b), as, on information and belief, the Estate is being administered, and a substantial part of the events giving rise to the claim occurred, in this district and division.

## OPERATIVE FACTS

6. **The Group Policy.** By virtue of his employment as a Firefighter with the City of Laredo, Guadalupe David De Luna (the "Insured") was eligible for coverage under Group Life Insurance Policy No. 754407-A (as defined herein, the "Group Policy"), which was issued by Standard to the City of Laredo, effective October 1, 2016. As of October 1, 2018, the Insured had the following coverage under the Group Policy: $40,000.00 in Basic

Life Insurance; $200,000.00 in Additional Life Insurance; $40,000.00 in Basic AD&D Insurance; and $250,000.00 in Additional AD&D Insurance. On information and belief, the Insured designated Tammy as the Primary Beneficiary under the Group Policy.

7. **Beneficiary Provisions.** Under the Group Policy, if benefits are not payable to the Beneficiary, they are paid in equal shares to the first surviving class of: Your Spouse; Your children; Your parents; Your brothers and sisters; or Your estate.

8. **AD&D Coverage under the Group Policy.** The Group Policy also contains an AD&D benefit, subject to the terms and conditions therein. The Group Policy defines a covered AD&D loss as: loss means of life … which meets all the following requirements:

1. *Is caused solely and directly by an accident.*
2. *Occurs independently of all other causes.*
3. *Occurs within 365 days after the accident.*
4. *With respect to Loss of life, is evidenced by a certified copy of the death certificate.*

9. **AD&D Exclusions in the Group Policy.** The Group Policy also states that no AD&D benefit is payable if the accident or Loss is caused or contributed to by, among other things: *Committing or attempting to commit an assault or felony, or actively participating in a violent disorder or riot. Actively participating does not include being at the scene of a violent disorder or riot while performing your official duties.*

10. **The Insured's Death.** The Insured died on or about April 16, 2020. Upon information and belief, the Insured was survived by Tammy, from whom he was apparently separated from at the time of his death, as well as the following children: Leliana Rios, John, Amanda Lozano, Clemente De Luna, Damian De Luna, Miguel De Luna, Uriel Lozano, and Sylvia De Luna. John was later appointed as Administrator of the Estate.

11. **Tammy's Claim.** In August 2020, Standard learned of the Insured's death and Tammy submitted a claim for the death benefits under the Group Policy.

12. **The Competing Claims.** That same month, Standard received another claim under the Group Policy from John indicating that he was contesting Tammy's designation as Primary Beneficiary and demanding that she not receive payment of any proceeds under the Group Policy, but instead that those benefits be paid to his Estate and other family members. Despite a request for additional information to support John's claim, to date, nothing further has been provided by John or anyone else.

13. **Standard's Investigation.** In connection with Standard's investigation of the claims, it received and reviewed the Insured's Certificate of Death (the "COD"), which lists the Insured's cause of death as "GUNSHOT WOUND OF CHEST" and lists the Insured's manner of death as "Homicide."

14. Standard continued to investigate the circumstances surrounding the Insured's death and, on or about January 20, 2021, Standard received the probable cause affidavit and complaint ("Complaint") against Ernesto Gillen ("Gillen"), where Gillen explained why he shot and killed the Insured. Gillen stated in relevant part that:

> [Gillen] mentioned that he arrived at [Tammy's] apartment at approximately 21:00 hrs to visit her. Then approximately 45 minutes later, [Tammy] began to receive multiple text messages and phone calls to which she finally answered. As per [Gillen], Tammy continued to tell a person on the line to leave and that he was not welcome at her apartment. Within moments, a heavy knock began at the front door to her apartment. At this point, [Gillen] stated that he walked to the living room where he had left his Customs and Border Protection duty belt and put it back on before returning to the hallway of the apartment. The door to said apartment was then forced open by a male who [Gillen] believed to be the person [Tammy] was talking to over the phone. [Gillen] then stated that after said male forced the door open, [Gillen]

drew his duty H&K P2000 in the low ready. Then once he observed said male to be unarmed he re-holstered said sidearm. As per [Gillen], said male then rush [sic] toward him in a belligerent demeanor and subsequently struck him numerous times on the side and back of his head before [Tammy] got between them. [Gillen] stated he did not strike said male in his defense due to [Tammy] being between them and only covered his head with his left hand which was subsequently struck and injured. Said male who was later identified as [Insured] (DOB 07/27/1977) ([Tammy's] husband) then managed to force [Tammy] from between them and subsequently threw [Gillen] to the floor of one of the bedrooms after striking his [sic] in the head again numerous times. At that point, [Gillen] stated that he felt dazed due to all the strikes he sustained to his head as he observed [the Insured] approach him while he was still on the ground. [Gillen] further explained that due to his left hand being injured, he did not attempt to reach for his baton and suddenly felt that if he allowed himself to be knocked-out [Insured] was [sic] take possession of his sidearm and shoot both him and [Tammy]. Due to this thought of imminent death, [Gillen] drew his duty side arm and ordered [the Insured] to stay back numerous times. Then when [the Insured] did not comply and continued to advance toward [Gillen] while on the ground, He fired one shot at close range to his torso.

15. By letter dated January 20, 2021, the District Attorney for Webb County, Texas informed Standard that a "No Bill" was returned by the Grand Jury on the Complaint and that its office would not be prosecuting the case against Gillen for the Insured's death.

16. **The Approval of the Life Insurance Claim.** Following the completion of its investigation, Standard determined that $240,000.00 in Basic and Additional Life Insurance Benefits (collectively, the "Life Proceeds") were payable under the Group Policy. However, under the circumstances, Standard cannot pay all or part of the Life Proceeds to Tammy, John, or the Estate (collectively, "Defendants") without incurring possible multiple liability due to the apparent separation of the Insured and Tammy at the time of the Insured's death, the circumstances surrounding his death, and the competing claims to the Life Proceeds. Standard is a disinterested stakeholder which claims no interest

in the Life Proceeds, except for its attorney's fees and court costs incurred herein.

17. **The Denial of the AD&D Claim.** Additionally, based on Standard's investigation, no AD&D proceeds (the "AD&D Proceeds") are payable under the Group Policy for at least two reasons. As an initial matter, Defendants failed to provide timely and adequate proof of loss demonstrating that the Insured's death was caused solely and directly by an accident, independent of all other causes, as opposed to the Insured engaging in the intentional and unlawful activities described above which resulted in his non-accidental death set forth in his COD. Second, even if Defendants had met their burden of demonstrating a covered loss under the AD&D coverage provisions in the Group Policy, such claim was properly denied due to the applicability of the AD&D exclusions.

18. Specifically, and without limitation, the Insured's death is excluded from AD&D coverage under the Group Policy because the Insured was committing or attempting to commit an assault or felony when he died. Under Texas Penal Code § 22.01, a person commits an assault if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

19. Similarly, under Texas Penal Code §§ 30.02(1)(a) and 30.01(c)(2), a person commits a second-degree felony if, without the consent of the owner, the person enters a habitation with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE § 22.01(a)(1) states that a person commits an assault if the person intentionally, knowingly,

or recklessly causes bodily injury to another, including the person's spouse.

20.     Standard asserts that the Insured's actions on April 15, 2020, constitute assault of Gillen and/or felony burglary as he entered Tammy's apartment (habitation), after she expressly denied him entry and, upon entrance, the Insured assaulted Gillen. *See* TEX. PENAL CODE §§§ 30.02(1)(a), 30.01(c)(2), and 22.01(a)(1). The Insured's unlawful actions directly caused and/or substantially contributed to his death. Accordingly, pursuant to the express terms of the AD&D exclusion in the Group Policy, the AD&D Proceeds are not payable. Although the Insured was never formally charged or convicted with burglary or assault, likely because of his death, the plain language of the Group Policy does not require a criminal charge or conviction to deny payment of AD&D benefits. Thus, for these reasons, Standard asserts that the AD&D Proceeds are not payable under the Group Policy.

## CAUSES OF ACTION

21.     **Standard's Interpleader of the Life Proceeds.** Standard requests that the Court accept the Life Proceeds into its registry and require Defendants, or third parties presently unknown, to interplead their claims to such Life Proceeds. Contemporaneously herewith, Standard has sought (or subsequently will seek) leave to deposit the Life Proceeds, together with interest thereon, into the Court's registry until a final determination by the Court can be made as to who is entitled to the Life Proceeds. Standard also requests that the Court discharge and dismiss Standard from all liability to Defendants or any other person with respect to the Life Proceeds under the Group Policy.

22.     **Declaratory Judgment.** Standard states that there is an actual, justiciable

controversy between the parties and requests the Court grant declaratory judgment relief pursuant to 28 U.S.C. § 2201 and adjudicate the following two issues. First, whether Defendants or third parties presently unknown are entitled to payment of all or part of the Life Proceeds under the Group Policy, and to thereafter award the Life Proceeds to the party or parties legally entitled to receive them. Standard also requests that the Court discharge Standard from all liability to Defendants or any other person with respect to the Life Proceeds. Second, that Defendants' claim for the AD&D Proceeds is barred by applicable conditions precedent and/or exclusions in the Group Policy for the payment of such AD&D Proceeds due to the circumstances outlined above.

23. **Attorney's Fees.** Standard has retained the services of the undersigned attorneys to prosecute this action. Standard thus seeks all of its reasonable attorney's fees and court costs incurred in this action from the interplead funds or otherwise.

## REQUEST FOR RELIEF

24. **Prayer.** Standard respectfully requests the following relief:

   (a) That Defendants be served with Summons and this Complaint and be required to answer in the time and manner prescribed by law;

   (b) That the Court accept the Life Proceeds of the Group Policy into its registry pending further order of the Court;

   (c) That the Court enter an order discharging Standard from all liability to Defendants or anyone else with respect to the Life Proceeds;

   (d) That the Court require Defendants and all other interested parties to interplead their claims to the Life Proceeds under the Group Policy and, on final trial, award the Life Proceeds to the party or parties rightfully and legally entitled to receive them;

(e)  That the Court grant the declaratory relief requested by Standard and that it thereafter dismiss Standard from the case, with prejudice;

(f)  That the Court award Standard its reasonable attorney's fees and court costs, to be paid from the interplead funds or otherwise; and

(g)  That Standard have all such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Dated: March 21, 2022                Respectfully submitted,

By:    */s/ Ryan K. McComber*
Ryan K. McComber
Texas Bar No. 24041428
ryan.mccomber@figdav.com
Kristina A. Pierre-Louis
Texas Bar No. 24092973
kristina.pierre-louis@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEY FOR PLAINTIFF
STANDARD INSURANCE COMPANY